**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| **In re:** | **Bankr. Case No. 23-10117-TWD** |
| **WIRELESS ADVOCATES, LLC** | |
| **Debtor** | |

| | |
|---|---|
| **JASON KARROLL; BRANDON PHAM; ARMANI LITTLE; BRADLEY HIBBS; ROBERT PAULEY; JOEL GITTER; RUSTY CLARK; and TRACEY SAVA,** on behalf of themselves and all others similarly situated | **Adv. Proc. No. 23-01005-TWD** |
| **Plaintiffs** | |
| **v.** | |
| **WIRELESS ADVOCATES, LLC.** | |
| **Defendant** | |

**THIRD AMENDED CLASS ACTION ADVERSARY COMPLAINT FOR**
**VIOLATION OF FEDERAL WARN ACT 29 U.S.C. § 2101, ET SEQ.,**

**COMES NOW,** Plaintiffs, Jason Karroll, Brandon Pham, Armani Little, Bradley Hibbs, Robert Pauley, Joel Gitter, Rusty Clark, and Tracey Sava and file this Third Amended Class Action Complaint against Defendant Wireless Advocates, LLC on their own behalf and on behalf of over one thousand other employees, challenging Defendant's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

## **PARTIES**

1.      Plaintiff Jason Karroll is an adult resident of South Carolina. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

2.      Plaintiff Brandon Pham is an adult resident of California. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

3.      Plaintiff Armani Little is an adult resident of Connecticut. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

4.      Plaintiff Bradley Hibbs is an adult resident of Indiana. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

5.      Plaintiff Robert Pauley is an adult resident of Ohio. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

6.      Plaintiff Joel Gitter is an adult resident of Kentucky. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

7.      Plaintiff Rusty Clark is an adult resident of Illinois. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

8.      Plaintiff Tracey Sava is an adult resident of New Jersey. Plaintiff worked for Wireless Advocates, LLC prior to his termination on December 5, 2022.

9.      Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all affected employees who were employed by Wireless Advocates, LLC and were terminated as a result of its closure of its headquarters or principal place of business.

10.     Defendant Wireless Advocates, LLC ("Wireless Advocates") is a Washington Limited Liability Company.  Its members are residents of the State of Washington.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367.

12.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

13.     This Court has personal jurisdiction over this matter because Wireless Advocates is headquartered in this District and conducts substantial business operations in this District.

## FACTUAL ALLEGATIONS

14.     Wireless Advocates maintained, owned, and operated multiple kiosks throughout the country.

15.     Wireless Advocates' headquarters, or principal place of business, was maintained in Seattle, Washington.  At least seventy-six (76) full-time employees worked at Wireless Advocates' headquarters on and prior to December 5, 2022.

16.     Upon information and belief, all of Wireless Advocates' officers and other high ranking management employees who would possess the final decision-making authority as to whether Wireless Advocates would continue to operate as a going concern worked at the Seattle Headquarters.

17.     The former CEO of Wireless Advocates, Daniel Brettler, claims that in July of 2022, Costco "verbally informed [him] of its desire to terminate the Costco Agreement and

1 | discontinue [Wireless Advocates] as Costco's authorized vendor for wireless phone and rate plan
2 | sales."

3 | 18. Mr. Brettler also recognized that "Costco had previously agreed to provide 12
4 | months of written prior notice before terminating the Costco Agreement."

5 | 19. Despite that 12-month notice period, Mr. Brettler claims that "[Wireless
6 | Advocates] management became increasingly concerned that even if Costco did not elect to issue
7 | a formal notice of termination in the coming days, U.S. Bank could still in its discretion and at
8 | any time issue a notice of an Event of Default based upon the Informal Notice."

9 | 20. If such notice of default was issued, Mr. Brettler claims that "U.S. Bank could
10 | demand immediate payment of the $30.0 million line of credit balance, sweep the Debtor's bank
11 | account and thereafter refuse to make any additional advances, thus leaving the company's current
12 | payroll, benefits and tax obligations unfunded."

13 | 21. Upon information and belief, Mr. Brettler was a guarantor of the $30.0 million line
14 | of credit with U.S. Bank.

15 | 22. The Trustee has alleged that beginning "[i]n August 2022, Brettler both committed
16 | to a wind-down of the Debtor and engaged in a course of conduct designed to protect himself
17 | from personal liability at the end of this wind-down."

18 | 23. Upon information and belief, Brettler created a list of action items on August 12,
19 | 2022, in which he wrote, "Dan collateral preference behind bank w WA being established."

20 | 24. Upon information and belief, on August 14, 2022, Brettler reviewed a draft
21 | Consent in Lieu of Special Meetings for the Board of Managers of Wireless Advocates, LLC (the
22 | "Consent"). The Consent provided that the Board of Managers delegated to Brettler "all of its
23 | powers, authority and discretion to conduct an orderly liquidation and winding up on the

24 |

Company's affairs," including in Brettler's sole discretion the filing of a chapter 7 or chapter 11 bankruptcy proceeding or an assignment for the benefit of creditors.

25.     Upon information and belief, on August 15, 2022, Brettler caused the UCC Financing Statement to be filed with Washington's Department of Licensing – approximately 15 weeks before he would execute his loan documents.

26.     Upon information and belief, on August 17, 2022, Brettler drafted a document identifying his own risks to included "US Bank line of credit" and "Payroll, payroll taxes and any other taxes due."  He also identified a "Brettler personal imperative" as "USB secured line of credit," and suggested paying off the US Bank Line of Credit prior to full wind down of the Debtor's business with Costco financial support.

27.     Upon information and belief, on November 29, 2022, Brettler communicated with U.S. Bank for the purpose of terminating the U.S. Bank Line of Credit and "thus remov[ing] my guarantee."  He also reported that "[t]he balance on our line tomorrow should [be] zero as soon as a Verizon $4.9 million wire is received."

28.     Upon information and belief, on December 1, 2022, Brettler on his own behalf and on behalf of Wireless Advocates executed the Brettler Loan Documents.

29.     Upon information and belief, on December 2, 2022, Brettler wrote U.S. Bank and asked to "confirm that the line of credit has been cancelled and [Brettler's] guarantee is now removed."  Upon information and belief, U.S. Bank acknowledged termination of the U.S. Bank Line of Credit on December 4, 2022, which served to discharge Brettler's personal guarantee of the U.S. Bank Line of Credit.

30.     The following day, on or about December 5, 2022, Defendant announced that it would shutter its headquarters and all employees who worked there would be terminated on or

1  about February 6, 2023. Of those employees, approximately seventy-six (76) were terminated

2  early on January 13, 2023.

3      31.    The closure of its headquarters and termination of all employees who worked there

4  amounts to a "plant closing" as defined in 29 U.S.C. § 2101(a)(2) because more than fifty (50)

5  employees worked at the headquarters and all employees suffered an employment loss.

6      32.    On or about December 5, 2022, the same day the Seattle Headquarters closure was

7  announced, Plaintiffs, and approximately 1800 other Wireless Advocates employees, were

8  notified they were terminated immediately as a result of Wireless' Advocates proposed closure

9  of its headquarters or principal place of business in Seattle.

10      33.    Brettler, CEO of Wireless Advocates, delivered the news to Plaintiff and all other

11  affected employees via a conference call.

12      34.    In a Declaration filed on August 3, 2023, Brettler acknowledged the causal

13  relationship between the closure of the sales kiosks and the closure of the headquarters.

14      35.    Brettler claims that "Costco's decision to cease hosting Wireless Advocates sales

15  kiosks, eliminated all of our sales kiosks, which had been the source of virtually all of Wireless

16  Advocates' revenues."

17      36.    However, upon information and belief, Costco did not "cease hosting Wireless

18  Advocates sales kiosks" on December 5, 2022. In fact, upon information and belief, Costo was

19  surprised that Wireless Advocates closed on the day and in the manner it did.

20      37.    Rather, Brettler's decision to close the Seattle Headquarters – on the day after he

21  received confirmation that his personal guarantee on the $30.0 million line of credit with U.S.

22  Bank had been discharged – caused the closure of the sales kiosks scattered around the country.

23

24

38. The closure did not begin with Costco and flow upstream through the kiosks to the headquarters.

39. Rather, the closure began at the headquarters and flowed downstream to all the kiosks.

40. To state another way, the proposed closure of the headquarters or principal place of business of Wireless Advocates was a calculated decision – or as the Trustee referred to it "orchestrated" – that necessitated that all employees who worked at other sites would suffer an employment loss.

41. The employees, like Plaintiffs, who lost their job as a result of the proposed closure of Wireless Advocates' headquarters were not provided any advance notice of their employment loss.

42. Plaintiffs, and all other similarly situated employees, were "affected employees" and thereby entitled to notice under 29 U.S.C. § 2102(a)(1) because their job losses were a consequence of Wireless Advocates' proposed closure of its headquarters.

43. Wireless Advocates' failure to give 60 days' advance written notice to Plaintiffs and the other terminated employees was in violation of the federal WARN Act.

44. At all relevant times, Wireless Advocates employed 100 or more employees, exclusive of part-time employees, (i.e., those employees who had worked few than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

45. Approximately 1800 individuals lost their jobs as a consequence of the proposed closing of Wireless Advocates' headquarters or principal place of business.

46. Further, Plaintiff, Jason Karroll, worked at a kiosk location that included approximately four employees.

47. This location was included in the geographic region referred to by Wireless Advocates as NEF. This region contained 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

48. Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

49. These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

50. Plaintiff, Jason Karroll, along with the other employees in this region, were required to rotate between the kiosks in the region to cover shifts.

51. As such, Plaintiff's "single site of employment" includes all kiosk locations in the geographic area encompassed by Region NEF pursuant to 20 CFR § 639.3(i)(3), (8).

52. Therefore, Plaintiff and the other employees of this region, also suffered an employment loss as a result of the plant closing that occurred at his single site of employment – the geographic region referred to by Wireless Advocates as NEF.

53. Moreover, Plaintiff Brandon Pham worked at a kiosk location in California that contained a few employees.

54. This location was included in the geographic region referred to by Wireless Advocates as NWD. This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

55. Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

56. These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

57. Plaintiff, Brandon Pham, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

58. As such, Plaintiff Brandon Pham's "single site of employment" includes all kiosk locations in the geographic region encompassed by Region NWD pursuant to 20 CFR § 639.3(i)(3), (8).

59. Moreover, Plaintiff Armani Little worked at a kiosk location in Connecticut that contained a few employees.

60. This location was included in the geographic region referred to by Wireless Advocates as NE3. This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

61.     Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

62.     These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

63.     Plaintiff, Armani Little, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

64.     As such, Plaintiff Armani Little's "single site of employment" includes all kiosk locations in the geographic region encompassed by Region NE3 pursuant to 20 CFR § 639.3(i)(3), (8).

65.     Moreover, Plaintiff Bradley Hibbs worked at a kiosk location in Indiana that contained a few employees.

66.     This location was included in the geographic region referred to by Wireless Advocates as SEF.  This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

67.     Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

68.     These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related

merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

69.     Plaintiff, Bradley Hibbs, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

70.     As such, Plaintiff Bradley Hibb's "single site of employment" includes all the kiosk locations in the geographic region encompassed by Region SEF pursuant to 20 CFR § 639.3(i)(3), (8).

71.     Moreover, Plaintiff Robert Pauley worked at a kiosk location in Ohio that contained a few employees.

72.     This location was included in the geographic region referred to by Wireless Advocates as SEG.  This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

73.     Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

74.     These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

75.     Plaintiff, Robert Pauley, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

76.     In fact, at least one employee in this region, Justin Noble, was given the title "Floater Wire Sales Expert."  Justin was required to continuously rotate between all the kiosk locations and had no true "home base."

77.     As such, Plaintiff Robert Pauley's "single site of employment" includes all the kiosk locations in the geographic region encompassed by Region SEG pursuant to 20 CFR § 639.3(i)(3), (8).

78.     Moreover, Plaintiff Tracey Sava worked at a kiosk location in New Jersey that contained a few employees.

79.     This location was included in the geographic region referred to by Wireless Advocates as NE6.  This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

80.     Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

81.     These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

82.     Plaintiff, Tracey Sava, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

83.     As such, Plaintiff Tracey Sava's "single site of employment" includes all the kiosk locations in the geographic region encompassed by Region NE6 pursuant to 20 CFR § 639.3(i)(3), (8).

84.     Moreover, Plaintiff Joel Gitter worked at a kiosk location in Kentucky that contained a few employees.

85.     This location was included in the geographic region referred to by Wireless Advocates as SEK.  This region contained approximately 12 kiosk locations that are within reasonable geographic proximity – exhibited by Wireless Advocates decision to group the locations together.

86.     Upon information and belief, this region, including the employees who report to these kiosk locations, manage these kiosk locations, and work remotely in this geographical area, contains fifty or more employees.

87.     These locations have overlapping staff that report to and manage the locations located in this region; are used for the same purpose of selling cell phones and other related merchandise and services to the public; and utilize the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others.

88.     For example, if the kiosk Plaintiff Joel Gitter was working at did not have the specific item a customer was looking for, Joel would search the inventory list for other stores in the SEK region and direct the customer to the kiosk that would have that particular item.  Once Joel directed that customer to a different kiosk, Joel would then contact the employee on duty at that kiosk to let them know a customer was on their way to pick up an item that had been purchased.

89.     Moreover, Plaintiff, Joel Gitter, along with the other employees in this region, was required to rotate between the kiosks in the region to cover shifts.

90.     In addition, equipment, such as office supplies, was rotated from kiosk to kiosk in the region Joel worked.

91.     As such, Plaintiff Joel Glitter's "single site of employment" includes all the kiosk locations in the geographic region encompassed by Region SEK pursuant to 20 CFR § 639.3(i)(3), (8).

92.     As can be seen from above, Wireless Advocates instituted a company-wide pattern or practice that required its employees to rotate between the kiosk locations it grouped together based off of geographically proximity.

93.     Furthermore, the above Regions were also components of four larger managerial categories created by Wireless Advocates.

94.     Wireless Advocates separated its kiosk locations into four primary regions: Northeast Region, Northwest Region, Southeast Region, and the Southwest Region.

95.     These four larger regions were then further separated into the smaller subregions where each employee was stationed.

96.     For example, Region NEF, Plaintiff Jason Karroll's region, is a component of the larger Northeast Region.

97.     The Northeast Region was led by one employee, Christopher Medina, who had the title "Regional Director NE."

98.     The Northeast Region contained approximately twelve of the smaller subregions – such as Plaintiff Jason Karroll's NEF region.

99.     Likewise, Region SEF, Plaintiff Bradley Hibbs' region, is a component of the larger Southeast Region.

100.     The Southeast Region was led by one employee, Susu Leong, who had the title "Regional Director SE."

101.     The Southeast Region likewise contained approximately twelve of the smaller subregions, such as Plaintiff Bradley Hibbs' SEG Region.

102.     Upon information and belief, each subregion – such as Robert Pauley's Region SEG – contained a "floater" who had no designated kiosk to which was his or her "home base," but rather, was required to continuously rotate between all kiosks in the subregion.

103.     Given the geographic dispersion of all the kiosk locations owned, operated, and controlled by Wireless Advocates, the dispersion of employees through the United States, and the company's policy of rotating employees from kiosk to kiosk to cover shifts, the organization is unusual in its structure.

*Remote Employees*

104.     Plaintiff, Rusty Clark, was an employee of Wireless Advocates until the abrupt closure on December 5, 2022.

105.     Prior to the closure, Mr. Clark was promoted to District Manager of the SEK region.

106.     As District Manager, Mr. Clark did not report to any one kiosk every day.  Nor did Mr. Clark report to any one location of Wireless Advocates every day.  Rather, on the days he travelled, he would visit the kiosks within his region, SEK.

107.     As such, Mr. Clark was a remote or out stationed employee.

108.     All other District Managers who worked for Wireless Advocates are designated as remote employees.

109.     Mr. Clark and the other District Mangers' work was assigned to them from the Seattle headquarters.

110.     Further, Mr. Clark and the other District Mangers' job performance was reviewed by higher management employees who were stationed at the Seattle Headquarters.

111.     Because Mr. Clark and the other District Managers primary duties required travel from kiosk to kiosk, and because they are out stationed as a result of having no "home base," Mr. Clark and the other District Managers single site of employment is the Seattle Headquarters of Wireless Advocates.

112.     As such, they were a part of the mass layoff or plant closing that occurred at the Seattle Headquarters.

113.     Mr. Clark, nor any of the other District Managers, did not receive advance notice of their layoffs.

## **CLASS ACTION ALLEGATIONS**

114.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> **Nationwide Class**
>
> All persons who were employed by Wireless Advocates, LLC within the 90-day period prior to December 5, 2022, who suffered an employment loss as a result of its closure of its headquarters or principal place of business in Seattle.

115.     <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u>  The Class contains approximately 1800 individuals, the joinder of which in one action would be impracticable.  The exact number or

1  identification of the Class Members is presently unknown. The identity and number of the Class

2  Members is ascertainable and can be determined from the Defendant's records.

3      116.    Predominance of Common Questions - Fed R. Civ. P. 23(b)(3). The questions of

4  law and fact common to the Class predominate over questions affecting only individual Class

5  Members, and include, but are not limited to:

6          a.      Whether the Class Members were employees of the Defendant;

7          b.      Whether Defendant gave the requisite 60 days' advanced written notice;

8          c.      Whether Defendant can avail itself of any affirmative defenses;

9          d.      Whether the proposed class has enough members for this class action to

10                 proceed;

11         e.      Whether Defendant paid the Class Members 60 days' wages and benefits

12                 as required by the WARN Act.

13     117.    Defendant engaged in a common course of conduct giving rise to the legal rights

14 sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

15 Individual questions, if any, are not prevalent in comparison to the common questions that

16 dominate this action.

17     118.    Typicality – Fed R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of the

18 members of the Class in that they are based on the same underlying facts, events, and

19 circumstances relating to Defendant's conduct.

20     119.    Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1). Plaintiff will fairly and adequately

21 represent and protect the interests of the Class, has no interest incompatible with the interests of

22 the Class, and have retained counsel competent and experienced in such class action litigation.

23

24

120. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts. Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

121. Further, Plaintiff, Jason Karrol, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

**<u>Region NEF Sub-Class</u>**

All persons who reported to kiosk locations in the geographical region encompassed by NEF, supervised and/or managed in the geographical region encompassed by NEF, or worked remotely in the geographic region encompassed by region NEF who did not receive 60 days' advance notice of their employment loss.

122. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u> The Class contains 50 or more individuals, the joinder of which in one action would be impracticable. The exact number or identification of the Class Members is presently unknown. The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

123. <u>Predominance of Common Questions -</u> <u>Fed R. Civ. P. 23(b)(3).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

a. Whether the Class Members were employees of the Defendant;

b. Whether Defendant gave the requisite 60 days' advanced written notice;

c.     Whether Defendant can avail itself of any affirmative defenses;

d.     Whether the proposed class has enough members for this class action to proceed;

e.     Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

124.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

125.   <u>Typicality – Fed R. Civ. P. 23(a)(3).</u>  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

126.   <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u>  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

127.   <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u>  This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts.  Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

128.   Further, Plaintiff, Brandon Pham, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

**Region NWD Sub-Class**

All persons who reported to kiosk locations in the geographical region encompassed by NWD, supervised and/or managed employees in the geographical region encompassed by NWD, or worked remotely in the geographic region encompassed by region NWD who did not receive 60 days' advance notice of their employment loss.

129.    Numerosity – Fed R. Civ. P. 23(a)(1).  The Class contains 50 or more individuals, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown.  The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

130.    Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).  The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

       a.    Whether the Class Members were employees of the Defendant;

       b.    Whether Defendant gave the requisite 60 days' advanced written notice;

       c.    Whether Defendant can avail itself of any affirmative defenses;

       d.    Whether the proposed class has enough members for this class action to proceed;

       e.    Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

131.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

1  Individual questions, if any, are not prevalent in comparison to the common questions that

2  dominate this action.

3          132.    Typicality – Fed R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of the

4  members of the Class in that they are based on the same underlying facts, events, and

5  circumstances relating to Defendant's conduct.

6          133.    Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff will fairly and adequately

7  represent and protect the interests of the Class, has no interest incompatible with the interests of

8  the Class, and have retained counsel competent and experienced in such class action litigation.

9          134.    Superiority – Fed. R. Civ. P. 23(b)(3).  This case is best suited as a class action

10 because individual litigation of each Class Members' claims would be impracticable and unduly

11 burdensome on the courts.  Because of the size of each individual Class Members' claim, no Class

12 Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class

13 action in this case presents fewer management problems and provides the benefits of single

14 adjudication, economies of scale, and comprehensive supervision by a single court.

15         135.    Further, Plaintiff, Armani Little, brings this action as a class action pursuant to

16 Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

17              **Region NE3 Sub-Class**

18              All persons who reported to kiosk locations in the geographical region

19              encompassed by NE3, supervised and/or managed employees in the geographical

20              region encompassed by NE3, or worked remotely in the geographic region

21              encompassed by region NE3 who did not receive 60 days' advance notice of their

22              employment loss.

23

24

136. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u>  The Class contains 50 or more individuals, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown.  The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

137. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u>  The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

      a.      Whether the Class Members were employees of the Defendant;

      b.      Whether Defendant gave the requisite 60 days' advanced written notice;

      c.      Whether Defendant can avail itself of any affirmative defenses;

      d.      Whether the proposed class has enough members for this class action to proceed;

      e.      Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

138. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

139. <u>Typicality – Fed R. Civ. P. 23(a)(3).</u>  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

140.    Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

141.    Superiority – Fed. R. Civ. P. 23(b)(3).  This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts.  Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

142.    Further, Plaintiff, Bradley Hibbs, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

**Region SEF Sub-Class**

All persons who reported to kiosk locations in the geographical region encompassed by SEF, supervised and/or managed employees in the geographical region encompassed by SEF, or worked remotely in the geographic region encompassed by region SEF who did not receive 60 days' advance notice of their employment loss.

143.    Numerosity – Fed R. Civ. P. 23(a)(1).  The Class contains 50 or more individuals, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown.  The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

144. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

      a.    Whether the Class Members were employees of the Defendant;

      b.    Whether Defendant gave the requisite 60 days' advanced written notice;

      c.    Whether Defendant can avail itself of any affirmative defenses;

      d.    Whether the proposed class has enough members for this class action to proceed;

      e.    Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

145. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

146. <u>Typicality – Fed R. Civ. P. 23(a)(3).</u> Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

147. <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u> Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

148. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts. Because of the size of each individual Class Members' claim, no Class

1  Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class

2  action in this case presents fewer management problems and provides the benefits of single

3  adjudication, economies of scale, and comprehensive supervision by a single court.

4      149.   Further, Plaintiff, Robert Pauley, brings this action as a class action pursuant to

5  Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

6              **Region SEG Sub-Class**

7              All persons who reported to kiosk locations in the geographical region

8              encompassed by SEG, supervised and/or managed employees in the geographical

9              region encompassed by SEG, or worked remotely in the geographic region

10             encompassed by region SEG who did not receive 60 days' advance notice of their

11             employment loss.

12     150.   Numerosity – Fed R. Civ. P. 23(a)(1).  The Class contains 50 or more individuals,

13  the joinder of which in one action would be impracticable.  The exact number or identification of

14  the Class Members is presently unknown.  The identity and number of the Class Members is

15  ascertainable and can be determined from the Defendant's records.

16     151.   Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).  The questions of

17  law and fact common to the Class predominate over questions affecting only individual Class

18  Members, and include, but are not limited to:

19             a.     Whether the Class Members were employees of the Defendant;

20             b.     Whether Defendant gave the requisite 60 days' advanced written notice;

21             c.     Whether Defendant can avail itself of any affirmative defenses;

22             d.     Whether the proposed class has enough members for this class action to

23                    proceed;

24

1      e.     Whether Defendant paid the Class Members 60 days' wages and benefits

2            as required by the WARN Act.

3      152.     Defendant engaged in a common course of conduct giving rise to the legal rights

4 sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

5 Individual questions, if any, are not prevalent in comparison to the common questions that

6 dominate this action.

7      153.     <u>Typicality – Fed R. Civ. P. 23(a)(3).</u>   Plaintiff's claims are typical of those of the

8 members of the Class in that they are based on the same underlying facts, events, and

9 circumstances relating to Defendant's conduct.

10      154.     <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u>   Plaintiff will fairly and adequately

11 represent and protect the interests of the Class, has no interest incompatible with the interests of

12 the Class, and have retained counsel competent and experienced in such class action litigation.

13      155.     <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u>   This case is best suited as a class action

14 because individual litigation of each Class Members' claims would be impracticable and unduly

15 burdensome on the courts. Because of the size of each individual Class Members' claim, no Class

16 Member could afford to seek legal redress for the wrongs identified in the Complaint. A class

17 action in this case presents fewer management problems and provides the benefits of single

18 adjudication, economies of scale, and comprehensive supervision by a single court.

19      156.     Further, Plaintiff, Tracey Sava, brings this action as a class action pursuant to Rule

20 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

21       **<u>Region NE6 Sub-Class</u>**

22       All persons who reported to kiosk locations in the geographical region

23            encompassed by NE6, supervised and/or managed employees in the geographical

24

region encompassed by NE6, or worked remotely in the geographic region encompassed by region NE6 who did not receive 60 days' advance notice of their employment loss.

157. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u>  The Class contains 50 or more individuals, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown.  The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

158. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u>  The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

    a.     Whether the Class Members were employees of the Defendant;

    b.     Whether Defendant gave the requisite 60 days' advanced written notice;

    c.     Whether Defendant can avail itself of any affirmative defenses;

    d.     Whether the proposed class has enough members for this class action to proceed;

    e.     Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

159. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

160. <u>Typicality – Fed R. Civ. P. 23(a)(3).</u> Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

161. <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u> Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

162. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts. Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

163. Further, Plaintiff, Joel Gitter, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

**Region SEK Sub-Class**

All persons who reported to kiosk locations in the geographical region encompassed by SEK, supervised and/or managed employees in the geographical region encompassed by SEK, or worked remotely in the geographic region encompassed by region SEK who did not receive 60 days' advance notice of their employment loss.

164. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u> The Class contains 50 or more individuals, the joinder of which in one action would be impracticable. The exact number or identification of

the Class Members is presently unknown. The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

165. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

      a.     Whether the Class Members were employees of the Defendant;

      b.     Whether Defendant gave the requisite 60 days' advanced written notice;

      c.     Whether Defendant can avail itself of any affirmative defenses;

      d.     Whether the proposed class has enough members for this class action to proceed;

      e.     Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

166. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

167. <u>Typicality – Fed R. Civ. P. 23(a)(3).</u> Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

168. <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u> Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

169. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts. Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

170. Further, Plaintiff, Rusty Clark, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Sub-Class:

**Remote Employees**

All District Managers and other remote or out stationed employees of Wireless Advocates whose single site of employment is the Seattle Headquarters of Wireless Advocates.

171. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u> The Class contains 50 or more individuals, the joinder of which in one action would be impracticable. The exact number or identification of the Class Members is presently unknown. The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

172. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

a. Whether the Class Members were employees of the Defendant;

b. Whether Defendant gave the requisite 60 days' advanced written notice;

c. Whether Defendant can avail itself of any affirmative defenses;

1    d.  Whether the proposed class has enough members for this class action to

2      proceed;

3    e.  Whether Defendant paid the Class Members 60 days' wages and benefits

4      as required by the WARN Act.

5  173.  Defendant engaged in a common course of conduct giving rise to the legal rights

6 sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

7 Individual questions, if any, are not prevalent in comparison to the common questions that

8 dominate this action.

9  174.  <u>Typicality – Fed R. Civ. P. 23(a)(3).</u> Plaintiff's claims are typical of those of the

10 members of the Class in that they are based on the same underlying facts, events, and

11 circumstances relating to Defendant's conduct.

12  175.  <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u> Plaintiff will fairly and adequately

13 represent and protect the interests of the Class, has no interest incompatible with the interests of

14 the Class, and have retained counsel competent and experienced in such class action litigation.

15  176.  <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> This case is best suited as a class action

16 because individual litigation of each Class Members' claims would be impracticable and unduly

17 burdensome on the courts. Because of the size of each individual Class Members' claim, no Class

18 Member could afford to seek legal redress for the wrongs identified in the Complaint. A class

19 action in this case presents fewer management problems and provides the benefits of single

20 adjudication, economies of scale, and comprehensive supervision by a single court.

21     **COUNT I – VIOLATION OF FEDERAL WARN ACT**

22  177.  Plaintiffs, by this reference, adopts and re-asserts all allegations, averments, and

23 statements of fact contained in the preceding paragraphs of this Complaint.

24

178.    Plaintiffs and other affected employees who have worked for Wireless Advocates are entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 et. seq.

179.    Defendant is subject to the notice and back pay requirements of the federal WARN Act because Wireless Advocates is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B).

180.    Plaintiffs, and all other similarly situated employees, were not provided any advance notice of their job losses.

181.    Defendant engaged in conducting a plant closing but has not provided affected employees with the required notice, in violation of the federal WARN Act.

## JURY DEMAND

182.    Plaintiffs request a trial by jury on these claims.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs requests the Court enter the following relief:

    a.  Declare and find that the Defendant has violated the federal WARN Act, 29 U.S.C. § 2101 *et seq.*;

    b.  Certify this case as a class action;

    c.  Award compensatory damages and penalties, in an amount according to proof;

    d.  Award pre- and post-judgment interest;

    e.  Award reasonable attorneys' fees, costs, and expenses; and

    f.  Award any and all additional relief the Court may deem appropriate.

Respectfully Submitted,

**JASON KARROLL, BRANDOM PHAM, ARMANI LITTLE, BRADLEY HIBBS, ROBERT PAULEY, JOEL GITTER, RUSTY CLARK, and TRACEY SAVA**

By:    /s/ Richard J. Symmes
RICHARD J. SYMMES, #41475
**SYMMES LAW GROUP, PLLC**
1818 Westlake Ave N. Ste 202
Seattle, WA 98109
Telephone: (206) 981-5319
Email: richard@symmeslaw.com

William "Jack" Simpson
**LANGSTON & LOTT, PLLC**
100 South Main Street
Post Office Box 382
Booneville, MS 38829-0382
Telephone: (662) 728-9733
Facsimile: (662) 728-1992
Email: jsimpson@langstonlott.com